# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DAVID COX,  Case No. 1:06-cv-401

    Plaintiff,  Magistrate Judge Timothy S. Black

vs.

THE UPS HEALTH AND
WELFARE PACKAGE,

    Defendant,  **MEMORANDUM OPINION AND ORDER**

This is an ERISA[1] benefits recovery action through which plaintiff seeks an award of disability benefits from his former employer, United Parcel Services. Jurisdiction is premised upon 29 U.S.C. §1132(a)(1)(B). Relief is sought from the UPS Health and Welfare Package ("UPS"), the Plan Administrator of UPS's short-term disability policy (the "Plan") (AR UPS 0001-0099).[2]

Plaintiff was awarded short-term disability benefits from September 27, 2005 through December 18, 2005. At that latter time, UPS found no evidence in the record supporting a continuing claim of disability after December 18, 2005 and, therefore, UPS then discontinued paying such benefits. Through this civil action, Plaintiff seeks a reinstatement of the payment of these benefits.

Now before the Court is the Administrative Record, including a copy of the Plan

---

[1] *See* Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.*

[2] Defendant filed the complete Administrative Record, labeled UPS 0001-0317, on September 11, 2006. (*See* Doc. 14.)

(Doc. 14); and the parties' cross-motions for judgment on the administrative record. (*See* Docs. 16, 17). The parties have consented to disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 9.)

## I. BACKGROUND AND FACTS

UPS employed plaintiff as a part-time "pickoff" worker, responsible for sorting packages, that weighed on average twelve pounds, by pushing, pulling, sliding, and infrequently lifting the packages onto the correct chutes or rollers. As an eligible employee of UPS, plaintiff was a participant, as that term is defined by ERISA, in a plan of short-term disability coverage (the "Plan").

A. *THE PLAN*

Under the terms of the Plan, part-time employees may be eligible for up to 26 weeks of short-term disability (STD) payments. (UPS 0058.) Pursuant to the Plan, employees are considered disabled and therefore entitled to STD payments if the Claims Administrator determines that "you are limited from performing the material and substantial duties of your regular occupation because of a non-occupational illness or injury." *Id.* The burden is on the employee to provide objective medical information supporting a claim for disability. *Id.*

The Plan also grants UPS, "as Plan Administrator[,] . . . the exclusive right and discretion to interpret the terms and conditions of the Plan, and to decide all matters arising in its administration and operation, including questions of fact and issues pertaining to eligibility for, and the amount of, benefits to be paid by the Plan." (UPS

-2-

0094.)³

    B.    *Plaintiff's Claim and Termination*

On September 27, 2005, plaintiff was involved in an automobile accident when his car was rear-ended by another car. (UPS 0151-0152.) Plaintiff reported to work that day, but later reportedly suffered from headaches and neck tightness and left work to go to the emergency room.

Treatment notes from the emergency room indicate that "[t]here is no fracture, subluxation, destructive lesion or significant arthritis" and x-rays of the cervical spine were "essentially negative." (UPS 153).

Plaintiff then began treating with Dr. Errol Stern on October 13, 2005. At that time, Dr. Stern ordered a MRI of the cervical spine and noted that "x-rays were reviewed and seem to be within normal limits." (UPS 159.) The MRI "read out as basically negative," although Dr. Stern noted that there "may be a bipolar C2-3, non-compressive and slightly bulging disc." (UPS 160). He further opined that plaintiff should be off work for two weeks, at which time he would be reevaluated. *Id.* Ultimately, Dr. Stern opined that plaintiff was unable to work through December 12, 2005. (UPS 167.)

Dr. Stern indicated that plaintiff could return to work on December 12, 2005 with the following restrictions: no lifting over ten pounds, no repetitive bending, and no

---

³ The Plan also permits UPS to delegate administrative duties to service providers. (UPS 0094.) In this case, Broadspire Services, Inc. (a successor entity of Kemper) acted as a third-party claims administrator for the Plan, and Broadspire handled much of the preliminary communication with plaintiff. (UPS 0182.) UPS, however, is the Plan Administrator, with discretionary authority to interpret the Plan and to determine eligibility under the Plan. (UPS 0094.)

repetitive flexion/extension of the cervical area.

Based on Dr. Stern's evaluation of the objective medical evidence, and in accordance with the terms of the Plan, UPS approved short-term disability payments from September 27, 2005 through December 18, 2005.  (UPS 0120-121.)  Benefits were temporarily suspended from November 14, 2005 to December 18, 2005, but based on additional medical information submitted by plaintiff during his administrative appeal, the UPS Claims Review Committee approved retroactive benefits for that period.  The Committee, however, found no evidence in the record to support a claim of continuing disability after December 18, 2005.

Plaintiff administratively appealed his benefits denial.  Thereafter, on December 15, 2005, Dr. Ennis reviewed plaintiff's claim at the request of UPS.  Dr. Ennis contacted Dr. Stern as part of the peer review process, and Dr. Ennis's report states that the phone conference "confirms the fact that there are no objective findings on physical examination, which would preclude claimant from returning to the core activities of his own work."  (UPS 149)

However, Dr. Stern subsequently denied speaking to anyone from "Broadsprire Insurance."  (UPS 0177.)  As a result, UPS submitted plaintiff's claim for peer review two more times.  On January 24, 2006, orthopedic surgeon Martin Mendelssohn, M.D. found "no objective neurological deficits that would correlate with the claimant's numbness, nor any diagnostic finding that would reveal objective clinical findings that correlate with claimant's subjective complaints."  (UPS 0181).  Dr. Mendelssohn

-4-

concluded that short term disability payments should be denied effective November 14, 2005.

Plaintiff's attorney supplemented the record on January 1, 2006 and March 16, 2006 with additional information from Dr. Stern.  Thus, in March 2006, Dr. Ira Posner, an orthopedic surgeon and pain management specialist, conducted an additional review of plaintiff's claim.  (UPS 0211-214, 0217-220).  Based on the medical evidence of record, Dr. Posner concluded that plaintiff "had moderate functional deficit with regards to the cervical spine including loss of range of motion and moderately severe muscle spasm that would have precluded him from participating in sustained work activity at heavy duty level from November 14, 2005 through December 18, 2005."  (UPS 0214.)  However, Dr. Posner's report further indicated that "based on lack of any additional documentation, there is no evidence of a functional impairment or neurological deficit that would preclude the claimant from returning to his regular work a activity, which is at the heavy level, as of December 19, 2005."  (UPS 0120-121). Accordingly, the Review Committee denied additional any short-term disability benefits to plaintiff effective December 19, 2005.

On or about May 22, 2006, after exhausting all of his administrative appeals, plaintiff initiated a civil action in the Hamilton County Court of Commons Pleas seeking to have his disability benefits reinstated.  (Doc. 1).  Thereafter, on June 28, 2006, UPS removed the instant action to this Court.

## II.  STANDARD OF REVIEW

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosps. v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir. 2000).  If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *University Hosps.,* 202 F.3d at 845.

Here, the undersigned finds that the arbitrary and capricious standard applies in the present case because the long term disability insurance policy at issue gives UPS discretionary authority.  (UPS 94.)  "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'"  *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential.  *Moon v. UNUM Provident Corp.,* 405 F.3d 373, 379 (6th Cir. 2005).  The court explained as follows:

> While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions.  As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins.*

> *Co.,* 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald,* 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

*Id.*

Only if the administrative record supports a "reasoned explanation" for the termination of benefits is the decision not arbitrary or capricious. *See Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (cited in *Moon,* 2005 WL 664330, at *5). That is, the decision of the administrator is upheld if it is the result of a deliberate principled reasoning process, if it is supported by substantial evidence, and if it is based upon a reasonable interpretation of the plan. *Glenn v. MetLife*, *et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006)(quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

### III. DISCUSSION

UPS determined that plaintiff was not entitled to additional short-term disability benefits based upon the objective medical evidence of record. As noted above, the medical evidence of record indicates that plaintiff was limited from performing the material and substantial duties of [his] regular occupation for the period of September 27, 2005 through December 18, 2005. Plaintiff's last visit to Dr. Stern occurred on December 2, 2005, whereupon he released plaintiff to return to work effective December 12, 2005, with the following restrictions: no lifting over ten pounds, no repetitive

bending, and no repetitive flexion/extension of the cervical area. (UPS 0162.) Dr. Stern further noted that there was no indication that these restrictions were permanent or even long term, plaintiff was improving with therapy, and he did not detect any neurological deficit. *Id.* No additional medical records were submitted.

Although Dr. Stern provided a letter to plaintiff's counsel on January 2, 2006 stating that plaintiff has "definite objective findings to support his disability," the letter does not reference any additional objective findings substantiating plaintiff's complaints. (UPS 0176.)

Here, UPS's decision was based on plaintiff's entire medical file, including: negative x-rays from his initial emergency room visit, a subsequent MRI read by Dr. Stern "as basically negative," Dr. Stern's report that plaintiff could return to work, and lift up to 10 pounds starting December 12, 2005; the reports of three independent orthopedic surgeons and a pain specialist; and the absence of subsequent medical records supporting disability beyond December 18, 2005.

Accordingly, the undesigned finds that UPS employed a deliberate and principled reasoning process in deciding to deny continued benefits. Moreover, UPS's decision is supported by substantial evidence, and it is based upon a reasonable interpretation of the plan. *See Glenn v. MetLife, et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006)(quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

-8-

**VI.**

In light of these findings, UPS's decision -- to terminate plaintiff's short-term disability benefits as of December 18, 2005-- was neither arbitrary nor capricious.  *See Yeager,* 88 F.3d at 381-82.

It is therefore **ORDERED** that UPS's motion for judgement (Doc. 17) is **GRANTED**; plaintiff's motion for judgment (Doc. 16) is **DENIED**; and this case is **CLOSED**.  A final judgment entry will be entered separately.


Date: September 19, 2007                                           s/Timothy S. Black
                                                                                  Timothy S. Black
                                                                                  United States Magistrate Judge